ALEXANDER M. GILBERT *vs.* HOMER MARQUIS *et ux.*

JULY 16, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is a bill in equity to set aside three certain deeds of real estate made by one Malvina V. Babcock, who was deceased at the time of filing the bill, to the respondents, and also to secure certain personal property which the respondent, Homer Marquis, claimed was given to him by the deceased. The case was heard by a justice of the superior court on bill, answer, replication and proof, and was decided in favor of the complainant as to two of the deeds and the personal property. A decree in accordance with such decision was entered in that court and the respondent duly appealed therefrom to this court.

Malvina V. Babcock was unmarried and her adopted son, Alexander M. Gilbert, was her only heir-at-law, at the time of her decease. After the filing of the bill of complaint, but prior to a hearing thereon, Alexander M. Gilbert deceased, and Jacqueline Gilbert, his widow, in her capacity as administratrix of his estate, was made a party complainant. Also, after the filing of the bill of complaint, but prior to hearing thereon, William P. H. Freeman, who was the duly appointed and qualified administrator of the estate of Malvina V. Babcock, was made a party complainant by order of the superior court. When the case came on for hearing, the complainants were Jacqueline Gilbert, administratrix of the estate of Alexander M. Gilbert, and William P. H. Freeman, administrator of the estate of Malvina V. Babcock.

Three issues of fact were raised by the complainants, namely, (1) lack of mental capacity to make the deeds in question, (2) undue influence upon Malvina V. Babcock by the respondent Homer Marquis, and (3) lack of consideration for the deeds of real estate and the gift of personal property. The first ground does not appear from the record to have been pressed by the complainants. The trial justice made his decision in a carefully prepared rescript,

in which he found that there was a lack of consideration to support two of the deeds and that undue influence had been exercised over Malvina V. Babcock by Homer Marquis in procuring the alleged gift of the personal property and also in obtaining the two deeds of the real estate.

The respondents contend, as we understand them, that this decision is contrary to the evidence, the law and the evidence and the weight thereof. They have analyzed the evidence at great length in their brief and by such analysis seek to show that there is no legal evidence to support the charge of undue influence. They also urge that there was ample evidence of consideration for the deeds of real estate by way of services performed by the respondent Homer Marquis for and on behalf of the deceased.

The complainants, on the other hand, contend that there is ample evidence to sustain the allegation of undue influence and lack of consideration and that, therefore, the finding of the trial justice should not be disturbed. Of course it is well settled that in an equity cause findings of fact made by a trial justice on conflicting evidence are entitled to great weight and will not be disturbed by this court unless they are clearly wrong. *Greene* v. *Rhode Island Hospital Trust Co.*, 60 R. I. 304, 197 A. 464. The respondents do not question this rule but claim, as we understand them, that the trial justice did clearly err in his findings and that his decision fails to do justice between the parties.

The record in this case is voluminous. The trial in the superior court consumed thirteen days, more than twenty-five witnesses testified and numerous exhibits were introduced in evidence. At the conclusion of the trial, counsel waived oral argument and at the suggestion of the trial justice submitted their arguments in writing. Ten weeks after the trial, the trial justice handed down his decision in a rescript containing findings of facts and his reasons for such findings. We have carefully considered this rescript and have examined the transcript to determine whether

the decision of the trial justice is clearly erroneous, and we are of the opinion that it is not.

It appears from the evidence that the respondent Homer Marquis came to work for Malvina V. Babcock some time in May or June 1931, and that his duties were largely those of a handy man around the premises owned by her and also those of an errand boy, more or less. He claims to have been hired in the capacity of her agent at a weekly wage of $40, and that he was paid that wage until sometime in the spring of 1933, when Miss Babcock became short of funds. Thereafter she paid him in odd sums from time to time but a substantial amount of arrears of wages had accumulated until, on July 31, 1935, she decided it was necessary to convey certain real estate to him in payment of such arrears and also in payment of a loan which he claims to have made to her. This deed was drawn by her personal counsel of many years standing, and the trial justice sustained it, on the ground that the evidence showed there was consideration for it in the form of arrears of wages although not on the basis of $40 a week.

It is not clear from the testimony whether Homer Marquis considered that accounts had been squared between him and Miss Babcock down to that date by this deed or whether there was still something owing to him. However, he continued to work for her without receiving his wages regularly, according to his testimony, until November 30, 1935, when she executed two additional deeds conveying her remaining real estate to him. These two deeds were not drawn by her own counsel but by counsel procured for her by Marquis. At the same time she gave all her personal property to him, leaving herself without any property whatsoever. Homer Marquis testified that she had given all her property to him because she owed him money and because he was the only person she could depend upon to take care of her for the rest of her life. Other testimony was also presented on his behalf to the effect that at the time these

two latter deeds of the real estate were given to him, it was understood between him and Miss Babcock that he was to care for her for the rest of her life. But such an undertaking was not incorporated in either deed.

Miss Babcock died at the home of Marquis on May 25, 1936, in her eighty-eighth year. At the time of her death, and for a considerable period of time before it, practically all of her old friends had been unable to see her, although a number of them had tried to do so. There was an overwhelming preponderance of testimony that Marquis had contrived, in different ways, to prevent her friends and relatives from seeing her, but Marquis denied this and testified that Miss Babcock did not want to see anyone. Numerous incidents were testified to by witnesses for the complainants which, if believed, would clearly prove that the seclusion of Miss Babcock from such friends during the last few years of her life was designed by Marquis to serve his own purposes rather than to gratify the wishes of the deceased. Each one of these incidents Marquis categorically denied on the witness stand, but these bare denials, and such they were, do not carry conviction.

The trial justice had a better opportunity than we have to judge the credibility of the respondent Homer Marquis and the complainants' witnesses and to decide between them as to where the truth lay. He was better situated than we are to find whether or not the respondent Marquis was fairly charged with preventing Miss Babcock from having access to her friends and relatives or them from having access to her, regardless of the manner or the means by which that result was achieved.

There was also evidence that at the time Homer Marquis came to work for Miss Babcock and for some time previously she was in failing health, due to injuries which she had suffered and due to her advancing years; that her mental powers were failing noticeably, especially during the last few years of her life when Marquis had become her confi-

dential and trusted adviser, as well as her constant companion. This evidence of the failure of her mental powers did not rise to the dignity of proof of absolute mental incapacity, but it did strongly indicate such a degeneration as would make it easy for one whom she trusted implicitly to dominate her will. Marquis denied this on the witness stand, and several of his witnesses, who had had an opportunity to observe Miss Babcock in the last few years before her death, testified that they did not notice any failure of her mental powers. Here again we are forced to the conclusion that the trial justice, by reason of the advantage which he had of seeing the witnesses and hearing them testify, was in a much better position to resolve this conflicting testimony than we are from a perusal of the transcript.

Then there was further evidence that at the time Marquis came to her house in 1931, Miss Babcock had approximately $9000 in the bank; that she was receiving a more or less steady income from her real estate in the city of Providence and at Longmeadow; that she was frugal and thrifty if not actually stingy; that she lived simply; that there was no reasonable explanation of the expenditure of $9000 in two or three years; and yet, if Homer Marquis is believed, Miss Babcock was so short of funds in 1933 that she could not pay him his regular wages and was so reduced financially, some time later, that she actually borrowed money from him, her hired man.

As far as the record before us shows, only one other person had access to Miss Babcock's check book and other financial papers, and that person was Homer Marquis. Whether or not he knew more about her financial affairs than he was willing to testify to we do not know. It may well be that he did not, but all books and papers that might have thrown light on her financial status are missing, although Homer Marquis admitted he took full charge of Miss Babcock's effects when she moved from her home in Providence to his home in Pawtucket. He testified that Miss Babcock in-

structed him to burn some papers when they were cleaning her house, which he did, and the inference which he would have us draw from this is that the papers dealing with her financial affairs may have been destroyed then at her direction.

It would serve no useful purpose for us to detail here all the other circumstances which, if believed, strongly tend to prove that Homer Marquis designed to obtain for himself all of the property of Miss Babcock. The record is replete with them; and they show that he gradually brought about between himself and Miss Babcock a highly confidential relationship which, according to one of the witnesses who testified for him, led her to say to this witness that she would not know what to do if she did not have Homer, that he was the only one left who cared for her and that he was "priceless".

There is no question but that he was kind to Miss Babcock, that he tried in his own way to make her as comfortable as possible and that he saw to it that she was decently cared for in his home in her last illness, when it became evident that her own home was unsuitable with the winter approaching. But this is not a case of kindness merely. The evidence strongly indicated that he successfully used this very kindness, this extreme solicitude, together with the exclusion of practically all her friends and relatives from access to her, to acquire and exert undue influence over her and thus obtain all her property. It is not at all unlikely that Miss Babcock had come to believe, long before she gave her property to him, that her relatives and old friends had deserted her and no longer cared to interest themselves in her behalf. It is also likely that she died in that belief and in the further belief that her only friend was the man under whose roof and in whose care and that of his wife she found herself when her final illness laid her low and at length closed her eyes in death.

The question, however, that confronted the trial justice was how such faith had come about. Was it a natural growth justified by natural causes or was it an artificial thing conceived·and nurtured by a designing mind stronger than her own, whose owner was in a position of such trust and confidence that he was able to make that seem natural which was really the result of his own planning? The trial justice, in his rescript, has answered this question by finding that Homer Marquis obtained the two deeds of real estate in Longmeadow and Providence and all the personal property of Miss Babcock without consideration and by exercising undue influence over her. From our view of the evidence, we are of the opinion that this finding is correct.

We are unable to agree with the argument of the respondents that this evidence, in law, does not justify the finding of undue influence. The respondents' quotation from Thompson on Real Property, Art. 2876, is not in point, as it presupposes the non-existence of a confidential relation. On our view of the evidence in the instant case a relation of trust and confidence clearly existed between the respondent Homer Marquis and Malvina V. Babcock. Such was also the view of the trial justice.

The cases of *Walsh* v. *Denney*, 120 A. 67 (R. I.), and *Tillinghast* v. *Upham*, 181 A. 283, which respondents cite in their brief, are clearly distinguishable on their facts from the instant case.

The case of *Kerr* v. *McKenna*, 57 R. I. 252, 189 A. 408, also cited by the respondents, more nearly resembles the case at bar, at least in those aspects of the evidence which showed that the respondent McKenna had taken the deceased into her own home, had cared for and nursed her until death, and as a reward for that kindness had received by deed all of the deceased's property, notwithstanding the existence of very close relatives of the deceased with whom the deceased had not been on unfriendly terms. But here the resemblance ends. If one will carefully compare the

record of events leading up to the making of the deed in the *Kerr* case and the actual drafting of the deed by the deceased's own personal counsel, with whom she privately consulted before executing the deed, with the events preceding the making of the two later deeds in the instant case and the actual drafting of them by counsel procured by Marquis and previously unknown to the deceased, one will not fail to appreciate a striking dissimilarity.

Furthermore, in the *Kerr* case this court adhered to the decisions in this state which hold that, where a confidential relationship exists and the circumstances surrounding a gift or antecedent to it are such as tend to show fraud or undue influence, the burden is on the donee to overcome a presumption arising from such circumstances that the gift is void. But the trial justice there found from the evidence before him that the donee, notwithstanding the fact that she did not personally testify, had, by the evidence which she had presented, satisfactorily overcome that presumption. Indeed, the real question in that case was whether the donee, herself, was required to testify to overcome that presumption. We held that was not necessary, and on the record before us, also decided that the trial justice was not clearly wrong in finding for the respondent. On the facts in evidence here, the respondents clearly fail to bring themselves with the *rationale* of that case.

We find it unnecessary to discuss the law further, as the instant case appears to us to be fundamentally a typical fact case, to which is applicable the well-established rule referred to at the outset of this opinion, that the findings of fact by the trial justice, on conflicting testimony in an equity cause, will not be disturbed unless they are clearly wrong.

For the reasons above stated, the respondents' appeal is denied, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*McKiernan, McElroy & Going, Peter W. McKiernan, James M. Stockett, Jr.,* for complainants.

*Charles F. Risk, Jacob Goodman,* for respondents.